IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JANE DOE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:19-cv-00166-P-BP |
| § | |
| CITY OF SPRINGTOWN and § | |
| FRANK CARROLL, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This civil rights action, originally filed in state court and removed to this Court, was referred to the undersigned pursuant to Special Order 3 on February 21, 2019. ECF No. 4. Before the Court are Defendant City of Springtown's Second Motion and Brief to Dismiss, ECF No. 36; Plaintiff's Response and Brief in Opposition, ECF No. 38; and Defendant City of Springtown's Reply Brief, ECF No. 43.

Plaintiff Jane Doe ("Doe") originally sued Defendants City of Springtown ("Springtown"), Springtown Independent School District ("SISD"), and Frank Carroll ("Carroll") under 42 U.S.C. §§ 1983 and 1988, and 20 U.S.C. § 1681(a). ECF No. 1 at 2. On September 27, 2019, Doe and SISD jointly stipulated to the dismissal with prejudice of all claims asserted by and between them. ECF No. 37. The Court dismissed Doe's claims against SISD on November 1, 2019. ECF No. 45. Doe retains her § 1983 claims against Springtown and Carroll.

The undersigned filed a Findings, Conclusions, and Recommendation on August 26, 2019, which United States District Judge Mark T. Pittman accepted on November 1, 2019. ECF Nos. 26, 44. The undersigned recommended that Judge Pittman deny the Defendants' Motions to Dismiss,

ECF Nos. 2 and 6, as moot if Doe timely filed an Amended Complaint. ECF No. 26. Doe filed an Amended Complaint within the allotted time period, so Judge Pittman denied as moot the Motions to Dismiss and allowed the action to proceed on Plaintiff's First Amended Complaint. ECF Nos. 33, 44. Afterward, Springtown filed a Second Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Doe failed to state a claim against Springtown in her Amended Complaint. ECF No. 36.

After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Judge Pittman **GRANT** Defendant City of Springtown's Second Motion to Dismiss and **DISMISS** Doe's claims **WITH PREJUDICE**.

### I. BACKGROUND

Doe brought this action against Springtown under 42 U.S.C. § 1983, alleging that Carroll, a Springtown Police Officer and SISD Student Resource Officer ("SRO") during the events in question, violated Doe's constitutional rights by sexually abusing and harassing her. ECF No. 33.

The following alleged facts are taken from Doe's First Amended Complaint and Jury Demand. *Id.* In 2009, the Springtown Police Department ("SPD") hired Carroll as a police officer, approximately three years after he had last worked in law enforcement. *Id.* at 2, ¶ 11. From fall 2012 until October 2015, Carroll served as the SISD SRO under an Interlocal Agreement between Springtown and SISD. *Id.* at 3, ¶ 19. The Agreement stated that the SRO "shall provide a uniformed police presence to improve the safety of the students and faculty, and provide campus security." *Id.* at 4, ¶ 27. The Agreement granted SPD Chief of Police Ed Crowdis, now deceased, and SISD Superintendent Mike Kelley the authority to assign an SRO to SISD and "establish and modify rules and regulations concerning the School Resource Officer's duties and schedule . . . ." *Id.* at 3, ¶¶ 14–16; 5, ¶ 30.

Prior to Carroll's 2012 assignment as SRO, Springtown received at least two complaints related to his sexual or official misconduct toward female community members. *Id.* at 6, ¶ 36. Carroll worked for the Mansfield Independent School District ("MISD") from April 2002 until April 2006 when he resigned, and an SPD background check revealed that Carroll was the subject of at least one complaint about his conduct toward a woman or girl at MISD. *Id.* at 3, ¶¶ 17–18. In 2012 and 2013, the Springtown City Administrator approved two merit-based pay increases for Carroll. *Id.* at 6, ¶ 40. Doe alleges that SPD's culture tolerated sexual misconduct. *Id.* at 6, ¶ 39.

Doe was a Springtown High School student and younger than seventeen when the events relevant to this lawsuit occurred. *Id.* at 2, ¶ 10. Carroll often requested that the school's receptionist use the public address system to call Doe out of her classes or other school activities, sometimes as many as three or four times per week and not for the purpose of carrying out his duties as SRO. *Id.* at 7–8, ¶¶ 43, 48, 49. Carroll's office had a covered window that prevented anyone from seeing inside, and he met with Doe without a principal, parent, or other adult present. *Id.* at 7–8, ¶¶ 47, 50. Doe argues that Springtown policy and custom endorsed the one-on-one meetings between Carroll and female students. *Id.* at 7, ¶ 47. Doe alleges that during these meetings, Carroll hugged her, kissed her, and touched her under her clothing, subjecting her to unwanted sexual contact. *Id.* at 8, ¶ 53. She argues that "in spite of Carroll's history, neither Springtown nor SISD authorities investigated whether Carroll had a legitimate reason to call [Doe] or other female students out of the classroom to meet with him alone in his office or elsewhere." *Id.* at 8, ¶ 52. Doe needed to seek counseling because of Carroll's actions. *Id.* at 9, ¶ 54. In 2017, Carroll was convicted of indecency with a child by sexual contact. *Id.* at 2, ¶ 11.

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal

of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, documents properly attached to the complaint or incorporated by reference, and matters of which a court may take judicial notice. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

### III. ANALYSIS

The Due Process Clause of the U.S. Constitution recognizes a public-school student's right to bodily integrity, protecting students from sexual abuse inflicted by municipal employees. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir. 1994). Title 42 U.S.C. § 1983 provides a cause of action to enforce this right. *Id.* at 450. To plead municipal liability under § 1983, the

plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

The first element of a § 1983 municipal liability claim requires the plaintiff to show an official policy. A municipality's official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). The plaintiff must specifically identify each policy that allegedly caused constitutional violations. *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001). "The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (internal citation omitted).

The second element of a § 1983 municipal liability claim requires determining whether the person acting on behalf of the municipality was an official policymaker. A policymaker is a person who has "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). "Determining who is a policymaker is a matter of [state and local] law, requiring a court to identify those 'officials whose decisions represent the official policy.'" *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 359 (5th Cir. 2014); *Praprotnik*, 485 U.S. at 112.

The Fifth Circuit "has long distinguished between final decisionmaking authority and final policymaking authority" when establishing municipal liability. *Valle*, 613 F.3d at 542. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dall.*, 541 F.3d 545, 549 (5th Cir. 2008). Additionally, "[t]he finality of an official's action does not therefore automatically lend it the character of a policy." *Id.* at 550. "If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability. . . . That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.'" *Id.* at 549 (quoting *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992)).

The third element of a § 1983 municipal liability claim requires the plaintiff to show that the official policy was the moving force behind the violation of a constitutional right. To do this, the plaintiff must show "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. For an official policy to be the moving force behind the violation of a plaintiff's constitutional rights, the plaintiff must show that the policymaker acted with "deliberate indifference" to the policy's known or obvious consequences. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 398 (1997). "To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety." *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (internal punctuation and citations omitted).

Doe fails to sufficiently state § 1983 claims against Springtown. She offers five alleged official Springtown policies: (1) SPD Chief Crowdis's acts of hiring and retaining Carroll as SRO; (2) SPD's alleged custom of hiring people who engage in sexual misconduct; (3) Springtown's

alleged custom of permitting Carroll to meet in isolation with female students; (4) Springtown's employee training policies; and (5) the Interlocal Agreement between Springtown and SISD setting forth the terms of the SRO program.

> **A. Doe fails to sufficiently allege that Crowdis's acts of hiring and retaining Carroll as SRO constituted an official policy because she cannot show that Crowdis was an official policymaker.**

Doe appears to allege that Crowdis knew of the 2010 and 2012 misconduct allegations and knew that Carroll routinely sexually abused Doe. ECF No. 33 at 12, ¶ 77; 16, ¶ 104. Even if Crowdis knew of Carroll's misconduct allegations before hiring him and knew of Carroll's abuse of Doe but retained him as SRO, Doe fails to allege that Crowdis's decisions to hire and retain Carroll were an official policy. A single decision by a policymaker may warrant municipal liability, but "this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle*, 613 F.3d at 542 (internal citation omitted). Doe fails to sufficiently allege that Crowdis, the municipal actor who made the decisions to hire and retain Carroll, was a final policymaker.

A governing body delegates policymaking authority by "expressly or impliedly acknowledg[ing] that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility." *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (internal citation omitted). This authority is "subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board." *Id.*

Doe argues that Springtown delegated policymaking authority to Crowdis through the Interlocal Agreements. She alleges that the Interlocal Agreement granted Crowdis "policymaking authority with respect to the [SRO]" and authorized him to "establish and modify rules and regulations concerning the [SRO's] duties and schedule." ECF No. 33 at 5, ¶ 31; 12, ¶ 81. She also

claims the Springtown Ordinance and the 1999 and 2013 Agreements "vested [Crowdis] with the duty to supervise Carroll," Crowdis's decision to promote Carroll to SRO was "a policy decision on the part of Springtown," and Crowdis had the authority to discipline Carroll. *Id.* at 10, ¶ 66; 12, ¶¶ 78, 81.

Crowdis may have had the final, executive authority to promote, discipline, and supervise Carroll, but this authority does not support municipal liability. *See Bolton*, 541 F.3d at 549 (internal citation omitted). The allegations listed above could support a finding that Crowdis had final, discretionary decision-making authority over the SRO program, but they are insufficient to show that Springtown delegated to Crowdis policymaking authority: the power to "set goals" and "to structure and design the area of the [SRO program]." *See Webster*, 735 F.2d at 841. Because Doe fails to sufficiently allege that Crowdis was an official policymaker, his decisions to hire and retain Carroll could not constitute an official policy of Springtown.

### B. Doe fails to sufficiently allege that SPD had an official policy of tolerating sexual misconduct.

Doe alleges that SPD "had a culture that tolerated [sexual or official misconduct]." ECF No. 33 at 6, ¶ 39. Such a culture could be construed as a custom of hiring people who engage in sexual misconduct. Doe alleges that SPD established this custom by disregarding Carroll's conduct when it hired him in 2009, retained him after complaints between 2010 and 2012, and promoted him to SRO. *Id*. These isolated decisions are not sufficient to show that a custom of tolerating sexual misconduct was officially adopted by a Springtown policymaker or was a persistent, widespread practice of Springtown employees that was so common and well-settled as to fairly represent municipal policy. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (defining a municipality's "official policy"). A single decision "gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle*, 613 F.3d at 542 (internal citation omitted). Doe fails

to allege an official Springtown policymaker who carried out this alleged policy of tolerating sexual misconduct.

### C. Doe fails to sufficiently allege that Springtown had an official policy that permitted Carroll to meet alone with female students.

Doe argues that Springtown had a custom that permitted Carroll to meet in isolation with female students and alleges that "[f]emale students were routinely called to Carroll's office." ECF No. 33 at 8, ¶ 51; 13, ¶ 82. Doe alleges an instance in which "Carroll removed a female student from the classroom to the exterior of the building without her parent's consent" and "an incident involving Carroll and a female student he removed from the classroom." ECF No. 33 at 7, ¶ 44; 12, ¶ 76. It is unclear whether the facts alleged in the previous sentence describe one event or two separate events.

To be actionable against a municipality, an official policy must be promulgated by an official policymaker or be so widespread that it constitutes a persistent practice of city employees that is common and well-settled. *Johnson*, 958 F.2d at 94 (defining a municipality's "official policy"). The incidents alleged above do not met this definition. Doe does not provide facts to support a claim that any official Springtown policymaker "sanctioned" the inappropriate meetings or officially adopted a policy of allowing them. *See* ECF No. 33 at 7, ¶ 47. She also fails to provide facts to support a claim that allowing the meetings was so widespread that it constituted a persistent practice of city employees that was common and well-settled.

### D. Doe fails to sufficiently allege an official Springtown training policy that was a moving force behind the sexual abuse.

Doe argues that Springtown failed to adequately train Carroll, which the Court understands as an argument that Springtown's training policies were inadequate to prevent constitutional rights violations. She fails to allege any specific policy, however. She appears to argue that Springtown acted unreasonably by placing Carroll in the SRO position "in an isolated office, without adequate

9

training" and "without increased training of those around him on the requirements for keeping students in class and monitoring SRO reports to determine when and why he was meeting with particular students with such frequency." ECF No. 33 at 15, ¶¶ 96–97. She argues:

> The need for additional training, on matters such as circumstances under which the SRO should be meeting with students, reconciliation of SRO reports with policy[,] and reasons stated for female students frequenting his office, was so obvious and the inadequacy so likely to result in the violation of constitutional rights that the policymakers were deliberately indifferent to the need.

*Id.* at 15, ¶ 97. She also argues that Carroll was "not trained on the prohibitions relating to removal of students [from class] in violation of [SISD policies]." *Id.* at 14, ¶ 95.

In order to properly plead municipal liability under § 1983, the plaintiff must specifically identify each policy that allegedly caused constitutional violations. *Piotrowski*, 237 F.3d at 579. Here, Doe fails to specifically identify a Springtown or SPD training policy that allegedly caused her constitutional violations. She also fails to allege that any training policy was a moving force behind her constitutional violations. She simply offers general conclusions that Springtown failed to properly train the SRO.

### E. Doe fails to sufficiently allege that the Interlocal Agreement was a moving force behind the sexual abuse.

Although Doe sufficiently alleges that the Interlocal Agreement is an official policy promulgated by an official Springtown policymaker, she fails to allege that the Agreement was a moving force behind the sexual assaults. To show that a policy is the moving force behind a constitutional violation, the plaintiff must show "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. The plaintiff also must show that the policymaker acted with "deliberate indifference" to the policy's known or obvious consequences. *Bd. of Cty. Comm'rs.*, 520 U.S. at 410.

Here, the policy at issue is the Interlocal Agreement. Doe does not allege any facts to

support a "direct causal link" between the Agreement and the sexual assaults. She alleges the Agreement

> was silent on the procedures for reporting prior sexual misconduct history by the police officer to SISD before placing the officer in the schools, silent on the criteria for retaining the officer as SRO in the event of such misconduct, and silent on whether individuals who had been under investigation could be promoted to SRO.

ECF No. 33 at 10, ¶ 64. The fact that the Agreement said nothing about sexual misconduct indicates that Doe likely cannot allege a direct causal link between the Agreement and the sexual assaults.

Doe alleges that Crowdis failed to follow the Standard Operating Procedure to the Interlocal Agreement and his failure to follow the procedure was a moving force behind the sexual assaults. ECF No. 33 at 13, ¶¶ 85, 86, 88. This argument is not persuasive because a municipal employee's failure to follow a policy does not give rise to a § 1983 municipal liability claim. Rather, liability comes from the opposite behavior: an employee following a policy that leads to a constitutional violation. Therefore, Doe fails to allege that the Agreement was a moving force behind the constitutional violations.

### IV. CONCLUSION

Doe fails to sufficiently state § 1983 claims against Springtown for five reasons. She cannot show that Crowdis was an official policymaker, which means she fails to sufficiently allege that his acts of hiring and retaining Carroll as SRO constituted an official policy. She fails to sufficiently allege that SPD had an official policy tolerating sexual misconduct or that Springtown had an official policy allowing Carroll to meet alone with female students. She also fails to sufficiently allege that an official Springtown training policy or the Interlocal Agreement was a moving force behind the sexual abuse.

Doe failed to sufficiently state § 1983 claims against Springtown in her first Complaint,

ECF No. 1, and the Court granted her leave to amend. ECF No. 26. She filed her First Amended Complaint, ECF No. 33, on September 9, 2019, apparently stating her best case. *See Days v. Brannon*, 2018 WL 1179605 at *2–3 (N.D. Tex. Feb. 7, 2018) (holding that dismissal with prejudice is proper after plaintiff has had opportunity to plead her best case). Because Doe failed to sufficiently state a claim in both her original Complaint and her Amended Complaint, the undersigned **RECOMMENDS** that Judge Pittman **GRANT** Springtown's Second Motion to Dismiss, ECF No. 36, and **DISMISS** Plaintiff's claims against Defendant City of Springtown **WITH PREJUDICE**.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on **November 26, 2019**.

_Hal R. Ray, Jr._
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE